151830 DG21 v. Mabus 151830 DG21 v. Mabus 151830 DG21 v. Mabus Good morning. May it please the court, my name is John Dolsky. I represent DG21, LLC. On the face of our appeal, I will be the first one to admit that it looks pretty simple. You've got a federal government contractor seeking a part of his firm fixed price portion of his contract, an equitable adjustment for a fuel rate increases. I think this court, the Court of Federal Claims, and the boards have been pretty clear that those types of increases, you're not entitled to an equitable adjustment. This is different. And the reason why it's different is because of the location of where the contract was performed. But when you entered into the contract, that doesn't come as a surprise. You knew what the location was when you entered the contract. Absolutely, Your Honor. And in fact, I think both parties understood it. And that's the reason why it's a little bit different. In our case, and in our contract, there is this fuel consumption or conservation program that they want to put in. In most federal government contracts, if you have a just your typical facility services contract, you would need a fuel conservation program. By the very nature of the firm fixed price contract, you already have a contractor with an incentive to cut consumption. Well, don't you have more of an incentive to cut consumption the higher the price of the fuel is? I don't understand your argument with regard to energy consumption in this case, because it seems to me, as I said, that in this case, your concern or your complaint is that you shouldn't have borne the brunt of the increase in fuel costs. And why, though, is you're bearing the brunt of increase in fuel costs not entirely consistent with an energy consumption program, which is trying to give you an incentive to use less rather than more energy? And that's where the difference lies. The difference is, in this case, the sole source of the fuel is from the United States government. We are on an island in the middle of the Indian Ocean. And there is no commercial access to fuel. There is no other civilian access to fuel. The only place we can buy this, the only place is from the United States government. It's interesting. And they set the price. And they set the price. They set the price. And that's what's in the contract. They set the price depending on whatever the DOD prevailing rate is. That is correct. So when you look at it. What I find hardest to understand is why, in the course of the negotiations of these contracts, that you, your client, deleted the provision that might have allowed an equitable adjustment for variation in fuel price. That's an excellent question. And I'd like to address that. The reason why we inserted it was we're in the negotiation phase of the contract. It was an offer to the government, look, for de minimis changes in rates, let's just have an agreement of 10% above or 10% below. Nobody will ask for equitable adjustment. But beyond that, either party, the government or DG21, could assert some sort of deductive or an equitable adjustment. Where does the contract say that? No, that was during the negotiation phase. And that was proposed for contract administration for whatever reason that we thought it would be appropriate. We thought it would be easier for both parties for the 10%. And it would be consistent with other economic adjustment clauses that are in the FAR. So that makes sense. However, the government rejected it. They said, no, we don't want to insert a 10% plus or minus with fuel rate increases or consumption increases on the contract. So it was really the United States that pulled that back. We offered it. They rejected the offer. So we went back. But it was agreed to. It is in the final arrangement, no longer contains the flexibility that might have been achieved. But you're now asking the courts to reinstate that. Well, our position is that the contract read as a whole entitled us to an increase in the contract price in the face of an increase in the DOD prevailing rate. So all what happened was, after negotiations, when the government said, no, we don't want that change, we went back to the four corners of the contract. And the four corners of the contract, in our opinion, says that, yes, we're responsible for consumption. And we will do our best to get our consumption in a manner consistent with lowering it, given the island that we're on. Wait, so it's your view that, even though the negotiations you described, you wanted a provision that gave you more control, that kind of fixed the rate in case there were substantial increases, you agree that you withdrew that provision. And now you're saying, we withdrew and you should read that sort of contract history as saying we withdrew it because we didn't need it, because we thought those provisions applied in any event? No, the reason why we proposed it, it was for de minimis changes. The 10%, the plus or minus 10%, is consistent with other FAR provisions, the Economic Adjustment Clause that is in the FAR. It's consistent with that. Tell us what, point us to what you to not have to pay for the adjustment of fuel costs, the rise of fuel costs. 52.243-4, the Changes Clause. The Changes Clause is crystal clear. And I guess, let's go back a little bit. You want to give me the section? There's A, B, C, D? Yes, it's FAR 52.243-4. OK, I asked you what changes in the contract. What provisions in the contract itself allow you to have the government absorb the costs? That is the provision we're relying upon, Your Honor. Because that provision by itself says a change in government furnished material that causes an increased cost to performance, we're entitled to an equitable adjustment. In other words, the FAR favors you. The FAR represents, this FAR represents a shift in the risk associated with the DOD prevailing rate increases. If that's all there were, you win. Right, if we fall within that provision. But then there's the contract. It's part of the contract. But you've got the express part of the contract that refers to the prevailing DOD rate. Well, that represents the change. That means they can make it up. They decide it. That's part of our problem, Your Honor. That's the heart of your problem. Pardon me? That's the heart of your problem. Well, we believe this. We believe when you read the contract as a whole, if you take into consideration the fuel conservation program that we were required to put in place, where the focus was on consumption, not rate, then as a whole, it's obvious to us that as long as we took care of our consumption and lowered our consumption, we got to keep the benefit of the lower consumption. Where does it say that? Can you point us to anything in the contract? I mean, you cited the FAR provisions, which are incorporated. What is there in the contractual language? The contractual language quite explicitly  It puts the, it shifts the burden? No, no, no. It gives you the responsibility to reimburse the government for the prevailing rate of fuel, which would include increases in fuel, right? That's absolutely in the case. So that's quite clear. So your suggestion is that the FAR provision on change overrides a clear provision in the contract? No, I think they need to be read together. You've got one provision that says, when you buy gas from the United States government, this is what we're going to charge you, the prevailing rate. And this is what you're going to pay. And this is what you're going to pay. So doesn't, in our review of our general application of rules of contract construction, doesn't the specific override the general? And in that case, doesn't the specificity of the contract override the more general FAR provisions? I don't believe this is a more specific provision to the FAR 52-243-4. You've got to read them together, right? What does 52-243-4 say with respect to changes in government furnished material? Well, the FAR talks about materials. But the contract talks about fuel. Correct. Judge Prost was saying, isn't fuel more specific than materials? Well, fuel is defined. Well, let's back up. 243-4 talks about government furnished material, correct? Material is defined under the FAR, under 45.101, as something that is consumed during performance of the contract, generally. Fuel is used or consumed during performance of the contract. Therefore, fuel is material. And if fuel is material, if there's a change in the government furnished material that causes an increase in our cost of performance, and there's no doubt the increase of the DOD prevailing rate caused us an increased cost of performance, then the contractor is entitled to an equitable adjustment. Hypothetically, if what you say about the FAR is correct in terms of you reading the FAR, if you're the government negotiator and you say, we want to override that in our contract, we want to make absolutely crystal clear that with respect to the cost of fuel, the contractor will be responsible for paying DOD at a rate in terms of the prevailing rate. How would you do that? I would probably have deleted 52-243-4 and not included that in the contract. Wouldn't you have used the exact language that they used in the contract? All that shows is what the reimbursable rate was. That's all that provision says. The only thing that provision says is when you're buying fuel from us on a reimbursement basement, this is the price. It doesn't say that any change to that price, we're not going to allow an equitable adjustment to. It just simply says. It doesn't say this is the price. Doesn't it say the contractor shall reimburse the government for that price? It doesn't say this is the price out there and we'll negotiate about what you have to pay. It says this is the price that you will be required to reimburse the government. Right, absolutely. But that doesn't mean, OK, this is the issue in the case. You're hitting right on the issue. The issue becomes then, who bears the risk when that reimbursement rate, the DOD prevailing rate, increases? What our position is, that's the real issue. And what our position is, is that 52-243-4 says that if you've got government furnished material, which is fuel, and you change it, and it causes an increased cost of our performance, the changes clause allows for an equitable adjustment. So the issue isn't necessarily, did the parties plan on fluctuations of DOD prevailing rates? The answer to that is absolutely yes. That was definitely in everybody's mind at the time. The question is, where does the risk go when those rates increase? Because remember, we're dealing with the United States Navy. The DOD prevailing rate is really disconnected to some extent to the contracting agency at this point. They're just pulling off a DOD prevailing rate for that area of the world, the Asia area. So I don't know how much the Navy had control of those rates. DOD did, but maybe not the Navy. But the point is, where does the risk get placed under the contract? Because that's what a contract is in its simplest form. I think we have your record. Why don't you retain your rebuttal, Tom? Let's hear from the governor. Thank you. Thank you. May it please the court, the court should affirm the board's conclusion that the contract language placed the risk of fluctuations in the price of the fuel on DG-20-R. Is it your position that the contract is unambiguous? Yes. Well, how can it be unambiguous when the contract incorporates the provision of FAR? And at least on their face, it appears that there might be some inconsistency between the two provisions as to how they apply the facts in this case, right? There's no inconsistency, as the board explained in its decision, because the contract needs to be construed as a whole. And that includes the changes clause. And what the board did is consider whether or not there was indeed a change in the contract requirements. Well, let's assume the provision that we've been citing in the contract was not there, and we just had reference in incorporation of the FAR provisions. How then would you construe the situation here? Would the contractor be entitled to the increased cost change, the increase in cost of fuel? I don't really see that as a change from the decision that the board rendered. The FAR provision is incorporated by reference into this contract. And what does the FAR provision mean applicable to this circumstance, leaving aside what the contract calls for now, just the FAR provision and how it would apply here? In terms of, well, the FAR provision has been construed by this court in numerous cases. And what the court looks to is whether there has been a change in the contract requirements. For example, there is the M.A. Mortison case from this court, where in that case, there was an anticipation on the contractor's part that a notice of proceed would be issued by a certain date. And then the notice of proceed was issued later by the government. So the government did something differently. But still, that was not a change within the meaning of the changes clause. OK. I just want to understand. Let's assume the contract was silent as to any explicit provision about who's obligated to pay what in connection with fuel costs. And the fuel costs at the time you signed the contract is $1.79 per gallon. And a year later, the cost of fuel is $3.79 per gallon. Does the FAR, in the absence of any other contractual language, would the FAR provision come into play? I.e., there's been a change over the past year. Cost of fuel has skyrocketed. And this is the kind of change that demands an equitable adjustment. OK, well, that is indeed a different case. Because you don't have notice. No, I understand that. I'm just trying to understand the FAR provision, how it relates outside of the context of this contract. The FAR provision is construed. According to this court's decisions, you construe the FAR provision in the context of all the other provisions. And what you do is you decide whether or not there has been a change in the contract requirements, considering what the contract is. OK, so in my hypothetical, if parties enter into a contract and the cost of fuel at the time is $1.79 per gallon, and it unexpectedly skyrockets within a year to more than double that, would the FAR provision that we're talking about come into play? If it's a fixed-price contract, I assume that it is a fixed-price contract, as this contract is. The answer would be no. It would not come into play. Because a fixed-price contract contemplates that all of these costs are- So even in the absence of the contractual provisions that we've got in this contract, even if they didn't exist, the obligation would still be on the contractor to bear the burden of the unexpected increase in fuel costs? Yes. And I would point to the Lakeshore Engineering Services decision of this court, which construes the FAR clause, the very same FAR clause, on a fixed-price contract, and says that where costs are part of the contractor's costs, that they are to be incorporated in the contractor's proposal to do the work for that fixed price, that type of a cost, if there is a fluctuation in that cost, which is part of the contractor's proposal, then you're not entitled to an equitable adjustment under the changes clause. And I would rely there- Do you agree that fuel under the contract is a government-provided material, as opposed to whatever else might be the responsibility of the contractor in a fixed-price contract? The board made the assumption that the fuel was a government-furnished material. And we believe that the decision can be affirmed based on that assumption. Are you telling us the assumption is correct, or that we should accept it because the board made it? It could be argued differently, given that there are all these different specific provisions. But this is critical to this case, is it not? Excuse me? This is critical to how one views the application of the FAR to these cases. Yes, yes. And I agree. I'm just saying that it could have been argued differently. But here, we are defending the board's decision based on the board's rationale. And the board points out that you construe the contract as a whole, in light of all the provisions of the contract, including the provision for contract-furnished fuel, 2.5.1.1, which, as the court understands, says that the contractor has to purchase the fuel for these vehicles at the DOD prevailing rate. I hear you saying that even if that assumption is incorrect, we should accept it because the board made it? Yes, yes. You may. That's very strange. Why should the court accept an incorrect assumption? And particularly, if the government agrees that it's an incorrect assumption? We are defending the board's decision based on the board's rationale. No, we're representing the United States. Correct. Alternatively, the court could come to its own conclusion that the fuel is not a government-furnished material based on the fact that, if you look at this contract, there are all... There's no basis for that, is there? Excuse me? There's no basis anywhere in the record for that, for us to make a conclusion that's contrary to what both sides tell us is the correct interpretation of this relationship. I'm simply pointing out that there are different provisions for government-furnished materials, government-furnished fuel, contractor-furnished fuel. And hypothetically, the court could come to its own decision a different way, take a different route to affirm it. Can you just clarify for me? I'm very confused by what you're saying. Is it the government's position that this was government-furnished material, or that it was not government-furnished material? Yes, that it is government-furnished materials. We're defending the board's decision. I thought your position was that it was not government-furnished material. No, I understood the court to be asking whether it could be construed differently. But we're defending the decision based on the board's rationale. And the board's own rationale is that this is a government-furnished material, and that there is no change in the government-furnished material within the meaning of the changes clause. Because the contract has to be construed as a whole. And it was understood and anticipated. OK, I'm a little confused. I understood the board to have concluded that this was not government-furnished material. Maybe I'm confusing this with another case. I think if you look back at, I would point the court to page 22 of the board's decision. And this is on page 22. It's at the center of the page. And the board says, I quote, even if the fuel at issue was government-furnished material within the meaning of FAR 52.243-4, fluctuations in the prevailing DOD rate would not constitute a change. OK, I thought that was just an alternative argument. And then you misunderstood. I'm sorry, Your Honor. I thought that was an alternative argument. No, that is the main rationale of the board. The board's conclusion is based on its reasoning that when the contract is read as a whole, there is no change within the meaning of the changes clause. And it goes on and it explains that what we're talking about here is the fuel for the vehicles and the equipment that the contractor operates. But they're not saying that that was a change in the contract. They're saying it was a change in the conditions under which the contract was performed. That is, the price of fuel changed dramatically. Well, what the board's rationale is is that when you look at the contract as a whole, it was anticipated that there would be changes in the prevailing DOD rate for the fuel for the contractor-operated vehicles. But there's always a threshold. There's always a barrier beyond which the conditions in a relationship between contractor and government change to the point where equity intervenes or should intervene to provide a fair and equitable relationship between the government and those who are willing to serve the government. And that's what we're being asked for here. There was a significant change in condition, not contemplated, apparently, by either party at the time the contract was entered into. The proposal that might have made it easier to obtain an equitable adjustment was not included in the final contract. I would think that the price changes in gasoline were a surprise at everybody in fuel at the time of performance. So it isn't really a change in the contract. It's a change in the conditions surrounding the contract. Is that not accurate? It was anticipated that there could well be escalation in the price of the fuel during the negotiation. Not such dramatic escalation that equity intervened or we're being asked for it to intervene. It was pointed out during the negotiations by the government. The government pointed out that there could well be escalations in the price of the fuel, as well as other parts of the proposal that was submitted. And that there was no provision in the contract and the terms for any economic price adjustment clause. That this was a fixed price contract. And it was the contractor's responsibility to take that into account. So all that was pointed out in the negotiations. And so your view is that the contract was absolutely clear. It didn't just, it wasn't just silent. It said explicitly that the contractor will reimburse the government for the costs at the time of the use of the fuel, right? Yes, the contract is clear. Because the contract language, first of all, it is a fixed price contract. This is part of the cost that the contractor has to take into account. And the contract language distinguishes between government furnished fuel and contractor furnished fuel. And this contractor furnished fuel is only for the vehicles and the equipment that the contractor itself operates. It's for that part of the contract that the contractor must purchase the fuel. And it purchases the fuel at the DOD prevailing rate. So it has- The contract says the government will make available fuel for items listed in spec item 2.5.1.1. Is that item 2.5.1.1 important to us? That is the contractor operated vehicles and equipment. So the contractor purchases the fuel only for the vehicles and equipment that it itself operates. The contractor drives them around on the base. So for those vehicles, that equipment, it must purchase the fuel, and it must purchase the fuel at the prevailing DOD rate. Does the government make available fuel for uses other than 2.5.1.1? Yes, that would be government furnished fuel. And that is fuel that is furnished free of charge, as the board pointed out in its decision. There's two types- You say that would be government furnished fuel, but for driving around, you said, it's also government furnished fuel. Government will make available for 2.5.1.1. Now you say for other than 2.5.1.1, that's also government furnished fuel. So it sounds like it's all government furnished fuel. No, that's not correct. If that's how you're interpreting what I said, I must have misspoken. There are two types of fuel. The contract furnished fuel is only for the contractor operated vehicles. If the contractor is operating the vehicle itself, then the fuel for that vehicle is contractor furnished fuel and the contractor must pay for it. And all the other fuel used on the base for whatever other reason would be government furnished fuel and is furnished free of charge, as the board pointed out in its decision. So the government set the fuel price, but there was nothing in the contract, as I recall, which said that the price set by the government must be the prevailing rate in that part of the world. Isn't that right? What was to stop the Navy from saying we're just going to double what we're charging you for fuel? Well, it's correct that the contract says that the contractor must pay the prevailing rate, the DOD prevailing rate. And that puts the contractor on notice that there could well be fluctuations in this rate. And the DOD prevailing rate is something that everybody knows, at least at the time it's set, it's something that's known worldwide, right? There's one DOD prevailing rate. Well, the rate may vary, for example, based on- Right, but at any particular time, it's not like the cost of fuel was different for use on this island than it was elsewhere. There's one DOD prevailing rate, right? For example, if Afghanistan, there might be a different rate for Afghanistan based on conditions there. But there is a DOD rate which is publicly known, historically known, it's out there, it varies over time, and it's based on,  considering transportation costs, storage, the market price of fuel, all those things go into it. But it is a publicly known rate, historically. If you have no more questions, we request that the decision be affirmed. Very quickly. A couple of things. With respect to the negotiations at the very beginning, and the 10% that DT21 offered, the 10% plus or minus on fuel costs, with respect to this case, to me, that's parole evidence. And although there was discussion beforehand, this court is still limited to what eventually ended up in the contract. And this flows back to whether there's an ambiguity in the contract or not. If there's an ambiguity in the contract, absolutely, those discussions are relevant, and they should go to the intent of the parties. But here, there has been no challenge that 52243-4 is ambiguous. There hasn't been an allegation or any type of argument that the contract as a whole is ambiguous. And even though that is a question of law that this court can certainly address today if they wanted to, we still believe in the four corners of the contract it's still unambiguous. And because it's unambiguous when you take into consideration all the provisions, the discussions that were happening, the pre-negotiations, pre-award discussions, aren't relevant as a matter of law. They're not relevant. I think they're illustrative. It still doesn't help surmounting the position that this was an assumption of risk. It was a complex, large contract, and that these provisions, if one aspect or another didn't quite work out, that just goes with the larger picture. I think this court still must look at the contract as it ended up, not as it was discussed through negotiations. And so although I think it's window dressing to some extent as far as a matter of law with the interpretation of the contract is, I don't think it's relevant. And it's not necessarily relevant, I don't think it can be used under parole evidence to define what the intent of the parties was. All right, let's assume it's irrelevant because I think it's fair to assume that every provision went through proposals and counter-proposals. Nonetheless, once it's over, the contract stands on its own, on its face, with each side accepting the risk that things aren't going to work out exactly as provided. Absolutely. And at which point, I think the most logical contract interpretation is that those aspects which don't quite work out are not subject to review under equity, but are rather stuck with the letter of the contract and the assumption of that risk, which doesn't help your argument. I would agree with you up to the point of the definition or the interpretation of the entire contract as a whole. Is there any other question? I'm out of time. I'd love to talk more, but I'm out of time. At the end, we'd like you to reverse the board's decision and grant the ability to seek an equitable judgment. Thank you. We'll thank all sides in the cases submitted.